UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:16-CR-00541 AGF (SPM) ) |
| TYRONE WILLIAMS et al, | ) ) |
| Defendants. | ) |

**GOVERNMENT'S JOINT RESPONSE TO DEFENDANTS TYRONE WILLIAMS, COREY COBB, AND JUSTIN WOODSON'S MOTIONS TO COMPEL DISCOVERY**

COMES NOW the United States of America, by and through its attorneys, Carrie Costantin, Acting United States Attorney for the Eastern District of Missouri, and Angie E. Danis, Special Assistant United States Attorney, and files its Joint Response to Defendants Tyrone Williams, Corey Cobb, and Justin Woodson's Motions to Compel Discovery (Docs. #235, #239, and #243).

**Procedural History**

On or about June 6, 2017, counsel for Tyrone Williams requested several items from the Government related to the use and deployment of a cell site simulator device in the above-referenced case. On or about June 28, 2017, the Government communicated to defense counsel that it did not believe such items were relevant or discoverable pursuant to Fed. R. Crim. P. 16 or any other provision of law. On July 17, 2017, counsel for defendant Tyrone Williams filed a Motion to Compel Discovery (Doc. #235), requesting an even lengthier list of items than were previously requested. On July 26, 2017, defendant Corey Cobb joined in defendant Tyrone

Williams's Motion to Compel Discovery (Doc. #239). On August 2, 2017, defendant Justin Woodson also filed a similar motion, requesting the same list of items as defendant Tyrone Williams (Doc. #243).

The deployment of the cell site simulator in this case resulted in investigators identifying a new telephone number utilized by Tyrone Williams, for which investigators obtained the fourth of seven total judicially-authorized wiretaps. All three defendants bringing these motions were intercepted either on Target Telephone #4 (the subject of this motion) or on subsequent target telephones. Williams has standing to challenge the cell site simulator. While Cobb and Woodson have standing to challenge the court-authorized wiretap of a phone on which they were intercepted, it is not at all clear that they have a standing to contest the employment of a cell site simulator on a telephone of, belonging to, and utilized by another person. For that reason alone, Cobb and Woodson's Motions should be denied. However, even if each of these defendants had standing to seek the materials at issue, their Motions to Compel are without merit.

**Factual Background/How Pen/Trap-and-Trace Utilized in This Case**

In the late 1990s and early 2000s, investigators in northern Missouri and west-central Illinois undertook an investigation into a group of individuals whom they believed to be responsible for the large-scale distribution of a variety of controlled substances in the Hannibal, Missouri and Quincy, Illinois areas. By 2013, local investigators, as well as agents from the Drug Enforcement Administration (DEA), had identified some of the lower-level members of the drug trafficking organization, but had not yet identified the sources of the organization's drug supply. Investigators first identified the cellular telephone number of defendant Corey Cobb, a distributor in the organization, then obtained a judicially-authorized wiretap for that phone on June 13, 2013 (Target Telephone #1). Next, they identified a phone number they believed to be utilized by

Tyrone Williams and obtained wiretap authorization for that phone on July 17, 2013 (Target Telephone #2). As was common in this and many other drug trafficking organizations, members frequently discarded phones and utilized new ones for their illicit dealings to avoid detection from law enforcement. As a result, investigators terminated their monitoring on Target Telephone #2 after only ten (10) days. They then identified another phone being utilized by Tyrone Williams (Target Telephone #3) and obtained court authorization to monitor the contents of communications on that phone on August 13, 2013. Again, monitoring ceased early, after only twenty (20) days, when investigation revealed that Tyrone Williams was using a new phone to conduct his narcotics-related business.

On August 22, 2013, the Government applied for and obtained a Court Order for a Pen Register and Trap-and-Trace Device pursuant to Title 18, United States Code, Section 3123 (attached hereto and marked as <u>Exhibit 1</u>). In its Application for this Pen Register Order, the Government informed the Court that, pursuant to the proposed Order, the investigative agency (DEA) would attempt to obtain the unknown identifying information for the phone being utilized by Tyrone Williams (such as the electronic serial number (ESN), international mobile equipment identifier (IMEI), international mobile subscriber identify (IMSI), or mobile equipment identifier (MEID)) (*see* Application, attached hereto and marked as <u>Exhibit 2</u>). More specifically, the Government informed the Court that the investigative agency(ies) would install and use the pen register and trap-and-trace device from August 22, 2013 to October 20, 2013 to detect radio signals emitted from wireless cellular telephones in the vicinity of Tyrone Williams. <u>Exhibit 2</u>. By collecting this information in two or more public spaces where Tyrone Williams was physically present, they would be able to detect identifiers associated with the cellular telephone he was using and could subsequently obtain the telephone number associated with that device. It is crucial to

note that cellular telephones routinely transmit this information automatically to cellular towers in their vicinity as long as the phone is powered on. The Government further informed the Court in that Application that investigators would monitor Tyrone Williams's physical location via physical surveillance and, only when he was exposed to public view, would they use the device to collect the unique identifying information associated with his phone. The application clearly states, "No content of any communication will be obtained." Exhibit 2.

Pursuant to the Order dated August 22, 2013, investigators immediately began deployment of the device when Tyrone Williams was exposed to public view. On or about August 22nd and 23rd of 2013, investigators conducted physical surveillance of the target (Tyrone Williams) and notified the operator of the cell site simulator when the target was exposed to public view. During those two days, investigators were able to obtain identifying information from the cell phone utilized by Tyrone Williams by deploying the cell site simulator in the vicinity of Tyrone Williams's physical location. Pursuant to the order, no content of any communication was obtained from any phone from which the simulator captured the information. In fact, the device does not even possess that capability. Once again, the information captured by the simulator was information that was already being transmitted to cell phone towers in the vicinity. Any information that was not deemed pertinent to the investigation was purged.

The identifying information for the cellular phone being utilized by Tyrone Williams was obtained in at least three separate public locations. Once investigators were able to determine this identifying information, they then subpoenaed AT&T (*see* Subpoena, attached hereto and marked as Exhibit 3) and obtained the associated phone number ((314) 578-6179), for which investigators subsequently obtained a judicially-authorized wiretap (Target Telephone #4). From intercepts on Target Telephone #4, investigators were able to obtain the phone number of defendant Justin

Woodson, who was intercepted on Target Telephone #4 and Target Telephone #5.  Investigators also believe that Corey Cobb was intercepted on these additional wiretaps.

### General Response to Motions to Compel

All three parties jointly request a laundry list of items, many of which have no relevance to the issues to be decided in this case, are not discoverable under Fed. R. Crim. P. 16, or simply do not exist.  Defendants jointly demand that, pursuant to Fed. R. Crim. P. 16, the government must produce items "if the item is within the government's possession, custody, or control and…the item is material to preparing the defense…" Fed. R. Crim. P. 16(a)(1)(E)(i).  The defendants jointly (and generally) suggest that because of their *potentially* exculpatory nature, the defendants cannot sufficiently prepare for or litigate any potential *motions to suppress*.  Essentially, defendants are suggesting that this litany of items is materially necessary to preparing for a suppression hearing.

The Supreme Court has constrained Rule 16's requirement that the United States disclose items "material to preparing the defense," to "the defendant's response to the Government's case in chief" at trial. *United States v. Armstrong*, 517 U.S. 456 (1996).  Even if this provision of Rule 16 were applied in the present context, defendants bear the burden to establish materiality, which "is not satisfied by a mere conclusory allegation that the requested information is material to the preparation of the defense." *United States v. Krauth*, 769 F.2d 473, 476 (8th Cir. 1985).  While the Government does have a duty to disclose material exculpatory and impeachment evidence (*Brady v. Maryland*, 373 U.S. 83 (1963)), generally, criminal defendants seeking discovery must point to a statute, rule of criminal procedure, or other entitlement to obtain discovery from the government. *United States v. Johnson*, 228 F.3d 920, 924 (8th Cir. 2000).  Outside of Rule 16 and *Brady*, the defendants cite no legal authority for any of the items they request.

In a recent case in this district in which investigators utilized a cell site simulator, counsel for the defense made a nearly identical Motion to Compel the same discovery requested by the present defendants. *United States v. Jacobi Temple*, 4:15CR00230 JAR (JMB) (Doc. #301). In that case, a cell site simulator was utilized to track the defendant's location but, ultimately, he was arrested in a public space. United States Magistrate Judge John M. Bodenhausen found that defendant's arguments in support of obtaining the requested materials were mere speculation and the Court did not order the Government to turn over any of the requested items except for any data that was retained relating to defendant's cell phone. "If no data was retained, the Government shall so indicate. However, the Court will not require the Government to provide a copy of all policies or nondisclosure agreements that require the destruction of data." *Temple*, Order, Doc #320, page ID #2508. United States District Court Judge John A. Ross entered an order adopting Magistrate Judge Bodenhausen's decision on July 20, 2017. *Temple*, Memorandum & Order, Doc. #330. Judge Ross indicated in his Memorandum & Order that the only information the Government would be required to disclose would be the data the investigators retained with regard to the phone in question. *Id*. at page ID 2509. Consistent with that Order, the Government has attached that information as <u>Exhibit 4</u>.

The present case is analogous as the defendant was surveilled only in public spaces and the information collected by the investigators (the identifying information from Tyrone Williams's cell phone) was signaling information that was automatically being transmitted in the ordinary course of operation of the cellular phone used by Tyrone Williams and in which defendant Williams cannot be said to have had any reasonable expectation of privacy. The surveillance of defendant Williams is documented in the DEA-6 reports provided to the defendants in discovery and Bates stamped as pages GOV-01048 through GOV-01054.

## Law Enforcement Privilege

To the extent that the Court finds that any of the requested items are relevant and material to the preparation of Movants' response to the Government's case-in-chief, the Government further argues that any of the requested items would be subject to the judicially-recognized law enforcement privilege. The materials at issue in this motion are law enforcement sensitive and the disclosure of these materials could compromise future investigations by law enforcement. The materials are protected by the law enforcement qualified privilege because they are sensitive investigative techniques.

Courts throughout the country have recognized the existence of a law enforcement privilege, and have used that privilege as a basis to deny discovery requests. *See, e.g., United States v. Cintolo*, 818 F.2d 980, 1002-1003 (1st Cir. 1987) (recognizing "the policy of qualified privilege to be entirely appropriate…where a defendant seeks disclosure of confidential government surveillance information"); *In re Department of Investigation of the City of New York v. Myerson*, 856 F.2d 1492, 1507 (11th Cir. 1986) (recognizing "a qualified governmental privilege not to disclose sensitive investigative techniques" which therefore protected disclosure of the type and location of microphone used in undercover recordings). The purpose of the privilege is "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *Myerson*, 856 F.2d at 484; *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 64 (1st Cir. 2007).

The Government bears the initial burden of showing that the law enforcement privilege applies to the materials at issue, *In re the City of New York*, 607 F.3d 923, 944 (2d Cir. 2010), and

the court must then apply a balancing test in determining whether disclosure is required. *United States v. Van Horn*, 789 F.2d 1492, 1508 (11th Cir. 1986). The court should consider the defendant's "need [for] the evidence to conduct his defense and [whether] there are…adequate alternative means of getting at the same point. The degree of the handicap [to the defendant] must then be weighed by the trial judge against the policies underlying the privilege." *United States v. Harley*, 682 F.2d 1018, 1020 (D.C. Cir. 1982); *Cintolo*, 818 F.2d at 1002.

The cell site simulator (often referred to colloquially as a "Stingray," "Triggerfish," or "digital analyzer device") is a device utilized by law enforcement to both locate persons of interest in all types of investigations and to determine signaling information identifying cellular phones used by known subjects in furtherance of criminal activity. The disclosure of the materials requested by the defendants, including detailed breakdowns of how the device operates and how/when targets can avoid detection when the device is in use, would be hugely detrimental to the ability of investigators to successfully continue using the device. The risk of disclosing such material in terms of jeopardizing ongoing investigations far outweighs any need the defendants would have to this information, which is wholly irrelevant to any issue to be decided in the present case.

### Specific Responses to Tyrone Williams's Motion to Compel

Out of an abundance of caution, the Government will address each of defendant Tyrone Williams's requests, as the other defendants' requests mirror his:

1. Objection. The information requested is irrelevant and, to the extent the Court deems it relevant, subject to the aforementioned law enforcement privilege.
2. This information has been provided to the defendants in the form of DEA-6 reports Bates stamped GOV-01048 through GOV-01054. No further reports exist.

3. Objection.  The information requested is irrelevant.  To the extent the Court deems this request to be relevant, no such documents exist.

4. Objection.  The information requested is irrelevant.  To the extent the Court deems this request to be relevant, no such documents exist.

5. Objection.  The information requested is irrelevant.  To the extent the Court deems this request to be relevant, no such documents exist.

6. This information has been provided to the defendants in the form of DEA-6 reports Bates stamped GOV-01048 through GOV-01054.  No further reports exist.

7. Objection.  The information requested is irrelevant and subject to the aforementioned law enforcement privilege.

8. Objection.  The information requested is irrelevant.  To the extent the Court deems this request to be relevant, no such documents exist.

9. Objection.  The information requested is irrelevant.

10. A DEA-6 report Bates stamped GOV-01048 through GOV-01054 has already been provided to defense counsel.  Furthermore, there is a two-to-three page document that exists which provides information that may be responsive to this request.  However, the Government believes that this document is subject to the law enforcement privilege, as it could potentially reveal sensitive investigative techniques such as where the device needs to be in relation to the phone itself in order to collect the phone's identifying information.  Additionally, the information contained therein is irrelevant to any issue to be decided in a suppression hearing or trial, and is not discoverable pursuant to Fed. R. Crim. P. 16 or *Brady*.  Should the Court deem that this document is relevant, the Government respectfully requests an *in camera* review prior to any disclosure being ordered.

11. Objection.  The information requested is irrelevant.  To the extent the Court deems this request to be relevant, no such documents exist.

12. Objection.  The information requested is irrelevant.  To the extent the Court deems this request to be relevant, no such documents exist.

13. Objection.  The information requested is irrelevant and subject to the aforementioned law enforcement privilege.

14. Objection.  The information requested is irrelevant and subject to the aforementioned law enforcement privilege.

15. Attached hereto and marked as <u>Exhibit 4</u>, please find the only information retained by the investigative agency with regard to the data collected by the cell site simulator.

16. Objection.  The information requested is irrelevant and subject to the aforementioned law enforcement privilege.

17. Objection.  The information requested is irrelevant as the parties would not have standing to challenge anything with regard to third party cellular phones.  To the extent the Court deems such information to be relevant, no such documents exist.

18. Objection.  The information requested is irrelevant as the parties would not have standing to challenge anything with regard to third party cellular phones.  To the extent the Court deems such information to be relevant, no such documents or data exist.

19. Objection.  The information requested is irrelevant as the parties would not have standing to challenge anything with regard to third party cellular phones.  To the extent the Court deems such information to be relevant, no such documents exist.

20. The Department of Justice (DOJ) did not promulgate a public policy with regard to the use of cell site simulators until 2015.

21. Objection.  The information requested is irrelevant and subject to the aforementioned law enforcement privilege.

22. No such documents exist.

23. Objection.  The information requested is irrelevant and subject to the aforementioned law enforcement privilege.

WHEREFORE, for the aforementioned reasons, the Government requests this Honorable Court enter an order denying Defendants Tyrone Williams, Corey Cobb, and Justin Woodson's Motions to Compel Discovery (Docs. #235, #239, and #243).

Respectfully Submitted,

/s/ Angie E. Danis
ANGIE E. DANIS, #64805MO
Special Assistant United States Attorney
111 S. 10th Street, 20th Floor
St. Louis, Missouri 63101
(314) 539-2200
Angie.Danis@usdoj.gov

### CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2017, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/ Angie E. Danis
ANGIE E. DANIS, #64805MO
Special Assistant United States Attorney